UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN TRAN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>WINFRED KOKOR, et al.,<br><br>　　　　　Defendants. | Case No. 1:18-cv-00010 JLT (PC)<br><br>**ORDER WITHDRAWING FINDINGS AND RECOMMENDATIONS (Doc. 52); ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(Doc. 35) |

Before the Court is Defendants' motion for summary judgment. (Doc. 35.) For the reasons set forth below, the Court **GRANTS** the motion.

### I.　SUMMARY OF FACTS[1]

At the times relevant to this case, Mr. Tran was incarcerated at Substance Abuse Treatment Facility and State Prison, Corcoran, and housed in Facility E. Pl.'s Resp. to Defs.' Statement of Undisputed Facts ("Pl.'s Resp.") 1 (Doc. 44 at 1). Dr. Kokor and Nurse Powell were employed at the Facility E medical clinic, and Dr. Kokor was Plaintiff's primary care physician. *Id.* 2. Plaintiff had a history of kidney stones, with one passing naturally in 2014. *Id.*

On October 31, 2016, Plaintiff began suffering severe abdominal pain; and on November 2, 2016, he began urinating blood. *Id.* 2-3. Plaintiff informed medical staff, and Dr. Kokor

---

[1] Although Plaintiff disputes nearly all of Defendants' proffered facts, except for some minor inconsistencies, the parties agree on most of the substantive material facts. (*Compare* Docs. 35-2 & 45 *with* Docs. 44 & 49.) Except where otherwise noted, the facts in this section are those that the Court finds are undisputed.

1    diagnosed him with possible urolithiasis (kidney stones) and ordered a urine test. Defs.' Resp. to
2    Pl.'s Statement of Disputed Facts ("Defs.' Resp.") 2-3 (Doc. 49 at 2-3). "Plaintiff was then
3    transferred to the Triage and Treatment Area ('TTA') for emergency treatment." *Id.* 3. While at
4    TTA, Plaintiff was provided an injection of Toradol and Aleve for pain, plus one dose of
5    Ciprofloxacin (an antibiotic), then discharged. *Id.*

6    On November 3, 2016, Dr. Kokor examined Plaintiff and prescribed additional
7    Ciprofloxacin. *Id.* 3-4. According to Plaintiff, Dr. Kokor told Plaintiff that he believed a kidney
8    stone had passed, and thus a "urine strainer was unnecessary." *Id.* 4. Dr. Kokor also "indicated
9    that there was to be a 'follow up after [urine analysis] report for further review.'" *Id.*

10   On November 4, 2016, Plaintiff saw Nurse Powell for a follow-up appointment. *Id.*
11   Plaintiff informed her that his pain had decreased to a "4 out of 10" (from a previous "8 out of
12   10"), but that he was still experiencing more pain than normal. *See id.* 3, 5. Powell instructed
13   Plaintiff to continue taking Aleve on an as-needed basis and to seek further medical attention if
14   his pain or symptoms increased. *Id.* 5. Plaintiff's pain subsided between November 4 and
15   December 18, 2016. *Id.* 6.

16   On December 18, 2016, Plaintiff again began suffering severe pain in his abdomen. *Id.* He
17   went to the Facility E medical clinic, and he was transferred to the TTA. *Id.* Dr. Scharffenberg
18   prescribed morphine for pain and ordered that Plaintiff be transferred to Mercy Hospital. *Id.* At
19   Mercy Hospital, a CT scan revealed that Plaintiff had an "obstructing . . . ureteral stone at the
20   ureterovesical juncture." *Id.* 6-7. On December 20, 2016, Dr. Youngstrom, a urologist, performed
21   surgery, removed the kidney stone, and placed a "ureteral stent." *Id.* 7. "Dr. Youngstrom
22   informed Plaintiff that the stone had become embedded in Plaintiff's urinary tract." *Id.*

23   In his notes, Dr. Youngstrom indicated that Plaintiff would need to follow up with him in
24   one week for "KUB and possible stent removal." *Id.* Dr. Shah also advised Plaintiff that he would
25   need to follow up with Dr. Youngstrom in one to two weeks, and the "Physician Orders" and
26   "Physician Discharge Instructions" indicated the same. *See id.* Back at TTA, an unidentified
27   "nurse informed Plaintiff that he was going to have a follow-up appointment within 2 weeks with
28   Dr. Youngstrom," and Dr. Chang ordered the follow-up. *Id.* 8.

On December 21, 2016, Dr. Kokor instructed Plaintiff to continue taking Flomax and anti-inflammatory medications, and he ordered an X-ray and a follow-up to be scheduled with Dr. Youngstrom within one to two weeks. *Id.* Plaintiff underwent the X-ray exam on December 23, 2016. *Id.* Dr. Kokor determined that the test results were "within normal limits" and that "no other provided follow-up is required." *Id.*

On January 4, 2017, Plaintiff submitted a request for medical attention because he was experiencing pain in his flank region and because he had not yet seen Dr. Youngstrom for his follow-up appointment. *Id.* 10. On January 6, 2017, Nurse Powell saw Plaintiff and instructed him to continue taking Aleve for his pain. *Id.* 10. She and Dr. Kokor then submitted a request for a follow-up appointment with Dr. Youngstrom, because the appointment had not been scheduled. *Id.* 10-11.

On January 9, 2017, Plaintiff submitted another request for medical attention because he was experiencing severe, sharp pain in his lower abdomen. *Id.* 11-12. Nurse Powell saw Plaintiff and indicated that his follow-up appointment with Dr. Youngstrom would occur in a "very short period." *Id.* 12. After consulting with a doctor, Powell provided Plaintiff anti-inflammatory medications and told him to continue taking Aleve. *Id.*

On January 10, 2017, Plaintiff went to the Facility E medical clinic because he was experiencing "stabbing pains" in his abdomen and now urinating blood. *Id.* Dr. Chang prescribed Bactrim and an injection of Toradol, and he ordered a follow-up with a doctor for the following day. *Id.* 13. On January 11, 2017, Dr. Anderson ordered that Plaintiff be transferred to Mercy Hospital. At Mercy Hospital, "Plaintiff was diagnosed with obstructive uropathy with possible stent infection." *Id.* 14. Dr. Youngstrom and Dr. Kakarla indicated that the follow-up appointment with Dr. Youngstrom had not been scheduled. *Id.* "Dr. Youngstrom mentioned that he figured Plaintiff's follow-up with him was lost in the prison system." *Id.* 15. Dr. Youngstrom determined that, due to Plaintiff's "minor symptoms and likely reactive leukocytosis," the stent should be removed. *Id.* 14-15. Dr. Youngstrom removed the stent "without complication" on January 12, 2017. *Id.* 15.

///

## II. LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).

Summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of a factual dispute, the opposing party may not rely upon the allegations or denials of his pleadings but is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir.

4

2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., that it might affect the outcome of the suit under governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., that the evidence is such that a reasonable jury could return a verdict for the non-moving party, *see Anderson*, 477 U.S. at 250; *Wool v. Tandem Computs. Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In attempting to show a factual dispute, the opposing party need not prove a material fact conclusively in her favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). However, the opposing party must still produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

### III.  DISCUSSION

Prison officials violate the Eighth Amendment if they are 'deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs.'" *Peralta v. Dillard*, 744 F.3d 1076, 1081 (9th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care. . ." *Estelle*, 429 U.S. at 104-05. "A

medical need is serious if failure to treat it will result in significant injury or the unnecessary and wanton infliction of pain." *Peralta*, 744 F.3d at 1081 (internal quotation marks and citations omitted). "A prison official is deliberately indifferent to that need if he 'knows of and disregards an excessive risk to inmate health.'" *Id.* at 1082 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

The test for deliberate indifference to medical need is two-pronged with objective and subjective components. *See Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012). To establish deliberate indifference, a prisoner must first "show a serious medical need by demonstrating that failure to treat [the] prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Id.* (internal quotation marks and citation omitted).

As to the first, objective prong, "[i]ndications that a plaintiff has a serious medical need include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation omitted).

As to the second, subjective prong, deliberate indifference "describes a state of mind more blameworthy than negligence" and "requires more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835 (1994) (internal quotation marks and citation omitted). Deliberate indifference exists where a prison official "knows that [an] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. In medical cases, this requires showing "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Wilhelm*, 680 F.3d at 1122 (citation omitted). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted).

1    "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060
2    (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of facts from
3    which the inference could be drawn that a substantial risk of serious harm exists,' but [he] 'must
4    also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "If a [prison official]
5    should have been aware of the risk, but was not, then the [official] has not violated the Eighth
6    Amendment, no matter how severe the risk.'" *Id.* (internal quotation marks and citation omitted).

7    The parties do not dispute that Plaintiff satisfies the first, objective prong. *See generally*
8    Defs.' P. & A. in Supp. of Mot. for Summ. J. ("Defs.' P. & A.") (Doc. 35-1). It is clear Plaintiff
9    suffered from medical conditions that a "reasonable doctor or patient would find important and
10   worthy of comment or treatment." *Colwell*, 763 F.3d at 1066 (citation omitted). The parties only
11   dispute whether Plaintiff satisfies the second, subjective prong, i.e., whether Defendants were
12   deliberately indifferent to his serious medical needs.

13   The Court finds that Plaintiff fails to show that Defendants were subjectively deliberately
14   indifferent. When Plaintiff arrived at the Facility E medical clinic on November 2, 2016,
15   complaining of abdominal pain and blood in his urine, Dr. Kokor diagnosed him with possible
16   kidney stones, ordered a urine dipstick test, and transferred him to TTA for emergency treatment.
17   Defs.' Resp. 2-3. At TTA, Plaintiff received an injection of Toradol and Aleve for pain. *Id.* 3. The
18   next day, Dr. Kokor examined Plaintiff and ordered a second urine test, told him that he believed
19   a kidney stone had passed, and prescribed Ciprofloxacin, an antibiotic. *Id.* 4. On November 4,
20   2016, Plaintiff saw Nurse Powell and informed her that his pain had substantially decreased from
21   two days prior, though it was still more than normal. *See id.* 3, 5. Powell instructed Plaintiff to
22   continue taking Aleve on an as-needed basis and to seek further medical attention if his pain or
23   symptoms worsened. *Id.* 5. Plaintiff's pain and other symptoms subsided. *Id.* 6; Kokor Decl. ¶ 9
24   (Doc. 35-4 at 2). These facts fail to show "a purposeful act or failure to respond to [Plaintiff's]
25   pain or . . . medical need" on the part of Dr. Kokor or Nurse Powell. *Wilhelm*, 680 F.3d at 1122
26   (citation omitted).

27   Plaintiff's primary complaint against Dr. Kokor is that he failed to order further diagnostic
28   tests to determine whether a kidney stone was still present, and that he failed to order follow-up

7

appointments after November 3, 2016. *See* Pl.'s P. & A. in Supp. of Opp'n ("Pl.'s P. & A.") 10-14 (Doc. 43-1 at 17-21). However, this amounts to, at most, a difference of opinion regarding the proper course of treatment; and, a mere "difference of medical opinion . . . [is] insufficient . . . to establish deliberate indifference." *Toguchi*, 391 F.3d at 1058 (internal quotation marks and citation omitted). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment was medically unacceptable under the circumstances, and was chosen in conscious disregard of an excessive risk to [the prisoner's] health." *Id.* (internal quotation marks and citation omitted). Plaintiff fails to make this showing. He claims that a "computed tomography ('CT') scan with dye is the 'gold standard' test to diagnose kidney stones," and thus Kokor should have ordered such a test. *Id.* 12. But accepting as true that a CT scan is the "gold standard," Plaintiff fails to present evidence that Dr. Kokor's alternative course of treatment was medically unacceptable, particularly when his pain and other symptoms were subsiding. In a declaration, Kokor states, "[g]iven Plaintiff Kevin Tran's pain and symptoms were subsiding, I believed that the treatment plan and antibiotics were working, and that the kidney stone had, or was going to pass naturally shortly," and "additional time was needed to determine if further treatment was needed." Kokor Decl. ¶ 9. And, indeed, Plaintiff's pain *did* subside. Defs.' Resp. 6. Plaintiff does not present evidence that the adopted course of treatment was medically unacceptable under these circumstances.

Plaintiff's primary complaint against Nurse Powell is that she failed to refer him to a doctor on November 4, 2016. Pl.'s P. & A. 21-25. However, again, Plaintiff does not present evidence that Powell's alternative course of action—instructing Plaintiff to continue taking Aleve and to seek further medical attention if his pain or symptoms worsened—was medically unacceptable and chosen in conscious disregard to his health, given that Plaintiff had seen a doctor the day before and his pain and other symptoms were subsiding.

Plaintiff also argues that Defendants were deliberately indifferent by failing to schedule an appointment with Dr. Youngstrom after his surgery on December 20, 2016. Pl.'s P. & A. 32-36. The parties agree that a post-operation visit with Dr. Youngstrom should have been set up within one to two weeks after surgery. Defendants contend that the failure to schedule the appointment

8

1    was a result of miscommunication within the prison. Defs.' P. & A. 12-13. Plaintiff contends that
2    the failure was intentional. Pl.'s P. & A. 34-35.

3    Though the parties thus present a dispute of fact, the Court finds that the dispute is not
4    genuine. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-52 (1986). Plaintiff concedes
5    that a nurse informed him that he would be scheduled for a follow-up appointment within two
6    weeks of surgery and that Dr. Chang ordered the follow-up on December 20, 2016. Defs.' Resp.
7    8. He also concedes that Dr. Kokor ordered the follow-up the next day. *Id.* In his declaration, Dr.
8    Kokor states that prior to January 6, 2017, he believed the "appointment had been scheduled as
9    ordered." Kokor Decl. ¶ 11. Plaintiff, however, contends that Kokor canceled the order for the
10   follow-up appointment. *See* Pl.'s P. & A. 34-35. The sole piece of evidence he points to is a
11   notification of the results of an X-ray exam he underwent on December 23, 2016. *Id.* 34-35. The
12   form gives four options for a healthcare provider to check. (Doc. 43-1 at 233.) One of those
13   options states, "Your test results are essentially within normal limits or are unchanged and no
14   other provider follow-up is required." (*Id.*) This is the option that Dr. Kokor apparently checked.
15   (*Id.*) None of the other three options would indicate that test results are normal.

16   The Court finds that a reasonable jury could not conclude that Dr. Kokor cancelled the
17   appointment with Dr. Youngstrom based on this single form. The form is a notification of test
18   results for the patient. It informed Plaintiff that his X-ray results were normal. It is pure
19   speculation that it also cancelled the post-operative appointment that Dr. Kokor, Dr. Chang, and
20   an unidentified nurse had all ordered. It is also pure speculation that Dr. Kokor thought that
21   marking the form would cancel, or that he intended that it would cancel, the post-operative
22   appointment. The evidence is simply insufficient to lead a rational jury to resolve this factual
23   dispute in Plaintiff's favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,
24   586-87 (1986).

25   Taken as a whole, the evidence could, at most, show that Defendants or other prison
26   officials were negligent in failing to schedule the post-operative appointment with Dr.
27   Youngstrom. As Dr. Youngstrom mentioned, the request for an appointment may have been "lost
28   in the prison system." Defs.' Resp. 15. However, mere negligence, or even gross negligence, does

9

1  not establish deliberate indifference. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).
2  The evidence does not show that Defendants purposefully failed to schedule the appointment in
3  conscious disregard for Plaintiff's health. When Defendants learned that the appointment had not
4  been scheduled, they submitted a request for services to again schedule the appointment on
5  January 6, 2017, which was approved the next day. Defs.' Resp. 10-11; Kokor Decl. ¶ 11.

6  Plaintiff also claims Defendants were deliberately indifferent by prioritizing the above
7  request for services as "routine" instead of as "emergent," and, relatedly, that Nurse Powell was
8  deliberately indifferent by failing to refer him to a doctor on January 6 and 9, 2017. Pl.'s P. & A.
9  28-31, 34-35. As described above, on January 4, 2017, Plaintiff submitted a request for medical
10 attention because he was experiencing "pain and discomfort in his flank region." Defs.' Resp. 10.
11 Nurse Powell reviewed the request on January 5, 2017 and saw Plaintiff the next day. *Id.* Plaintiff
12 told Powell that his pain was a "4 out of 10." *Id.* Nurse Powell advised Plaintiff to continue taking
13 Aleve for his pain; and, after confirming that the post-operative appointment with Dr.
14 Youngstrom had not been scheduled, she and Dr. Kokor submitted a request to schedule it. *Id.* 10-
15 11. The request was approved the next day. Kokor Decl. ¶ 11. On January 9, 2017, Plaintiff began
16 experiencing severe pain in his lower abdomen. Defs.' Resp. 11-12. Nurse Powell saw Plaintiff
17 that day and informed him that his follow-up with Dr. Youngstrom would occur in a "very short
18 period;" and, after consulting with a doctor, she provided him anti-inflammatory medications and
19 told him to continue taking Aleve. *Id.* 12.

20 Plaintiff presents no evidence that the above course of treatment was medically
21 unacceptable under these circumstances and chosen in conscious disregard to his health. Plaintiff
22 points to the fact that Dr. Anderson submitted a request for services to transfer him to Mercy
23 Hospital on January 11, 2017, that was marked as "emergent" as indication that the defendants
24 were deliberately indifferent by marking their January 6 request as "routine." Pl.'s P. & A. 35.
25 However, Dr. Anderson made his decision under different circumstances. On January 10, 2017,
26 Plaintiff began experiencing significant amounts of blood in his urine; thus, Dr. Anderson
27 diagnosed him "with bloody urine and ureteral colic" on January 11 and submitted his emergent
28 request. Defs.' Resp. 13. Dr. Anderson's course of action in response to Plaintiff's more serious

symptoms on January 11 does not show that Defendants purposefully failed to respond to his medical needs on January 6 or 9.

The case of *Magarrell v. Mangis* provides a useful comparison. There, the prisoner-plaintiff complained for weeks that he was experiencing significant pain due to kidney stones. No. 2:04-cv-02634-LKK-DAD, 2009 WL 2579621, at *1 (E.D. Cal. 2009). He submitted a urine sample, which contained blood. *Id.* The plaintiff's doctor, however, refused to look at his medical file, which made clear that he had an extensive history of kidney stones. *Id.* The doctor instead accused the plaintiff of adding blood to his urine and suggested that he was only interested in drugs. *Id.* The plaintiff passed a kidney stone seven months later; and, a different doctor finally ordered a CT scan, which revealed that he had four additional kidney stones. *Id.* at *1-2. The court found that, "[g]iven this evidence, a reasonable juror could conclude that defendant . . . responded to plaintiff's serious medical needs with deliberate indifference." *Id.* at *13.

The Court is unable to make the same finding in this case. Drawing all reasonable inferences in favor of Plaintiff, the Court finds that the evidence before it fails to show a genuine issue of material fact. The evidence is simply insufficient to lead a rational trier of fact to conclude that Defendants were deliberately indifferent to his serious medical needs. Unlike in *Magarrell*, Defendants attempted to treat Plaintiff's kidney stone in November 2016, and they attempted to attend to his post-operative medical needs in December 2016 and January 2017. That Plaintiff ended up requiring surgery to remove a kidney stone in December, and that he ended up being urgently transferred to a hospital to remove a urinary stent in January, is circumstantial evidence showing, at most, misdiagnoses or negligence. The evidence does not show, though, any purposeful failure to respond to Plaintiff's medical needs. *See Wilhelm*, 680 F.3d at 1122. Summary judgment is therefore warranted.

///

///

///

///

///

IV.     **CONCLUSION AND ORDER**

For the reasons set forth above, the Court **WITHDRAWS**[2] the findings and recommendations (Doc. 52) and **GRANTS** Defendants' motion for summary judgment (Doc. 35).

IT IS SO ORDERED.

Dated:   **January 9, 2022**

UNITED STATES DISTRICT JUDGE

---

[2] The findings and recommendation are withdrawn due to the elevation of the undersigned to Article III status and the reassignment to the undersigned in that new role.